# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WALKER & COMPANY GENERAL
CONTRACTORS, INC.,**

                      **Plaintiff,**

**-vs-**                                          **Case No.  6:05-cv-1745-Orl-31KRS**

**TRANSCONTINENTAL INSURANCE
COMPANY and VALLEY FORGE
INSURANCE COMPANY,**

                      **Defendants.**

_____

# ORDER

      This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment

(Doc. 39) and Defendants' Response thereto (Doc. 44).

## I. Background

      Plaintiff, Walker & Company General Contractors, Inc. ("Walker"), purchased General

Liability Coverage from Valley Forge Insurance Company ("Valley Forge") in 1997.  The policy

was subsequently renewed and/or reissued by Transcontinental Insurance Company

("Transcontinental") from 1/1/1999 to 1/1/2005.  Both companies are subsidiaries of CNA.

      In 1998, Walker entered into a contract with Aloma Bend, Ltd. ("Aloma") to perform

construction at the Barrington Place Apartments ("Barrington Place") in Seminole County, FL.

On November 4, 2003, Aloma filed suit against Walker in the Circuit Court for the Ninth Judicial

Circuit of Florida.[1]  Aloma's original Complaint (Doc. 40-9) alleged that Walker breached its

_____

      [1]The suit initiated by Aloma against Walker will be referred to hereinafter as the "Underlying
Action".

contract with Aloma by failing to use and apply Elastomeric paint as agreed.  The complaint contained three counts for fraud in the inducement, negligent misrepresentation and breach of contract.  On March 4, 2005, Aloma filed an Amended Complaint (Doc. 40-13) adding allegations of negligence and breach of warranty   On March 8, 2005, representatives of Walker did a walk-through of the Barrington Place apartments, to observe the damage. (Doc. 39 at 9-10).

On March 31, 2005, Walker sent notice to Defendants of the Underlying Action. (Doc. 40-12).  Defendants responded by denying coverage for multiple reasons, including Walker's failure to comply with the notice provisions of the contract. (Doc. 40-16 at 29-30).  On November 22, 2005, Walker filed suit in this Court against Transcontinental seeking a declaratory judgment stating, *inter alia*, that: (1) Transcontinental has a duty to defend Walker in the Underlying Action and (2) Transcontinental is required to indemnify Walker in the Underlying Action. (Doc. 1 at 4).  On July 26, 2006, Walker filed an amended complaint, seeking essentially the same relief and adding Valley Forge as a named defendant. (Doc. 27).  On November 7, 2006, this Court entered an Order bifurcating the duty to defend issue, and staying the indemnity claim. (Doc. 37).  Walker now moves for partial summary judgment on the issue of Defendants' duty to defend the Underlying Action.

## I. Standard of Review

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929

F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgement points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).

## II. Legal Analysis

Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332(2). (Doc. 1 at 1).  Therefore, this Court is bound to apply the substantive law of the state in

which it sits. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  Accordingly, Florida contract and insurance law will apply in this case.

In Florida, when an insurance contract contains a notice provision that is a condition precedent of coverage, failure of the insured to comply with such notice provision may result in waiver of the insurer's duty to defend and indemnify. *State Farm Mutual Automobile Insurance v. Ranson*, 121 So. 2d 175 (Fla. 2d DCA 1960).  "The purpose of a provision for notice and proofs of loss is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *Id*. at 180.

All versions of the insurance contract in question include notice provisions under Section IV, entitled "Commercial General Liability Conditions".  These provisions read:

> **2. Duties In the Event of Occurrence, Offense, Claim or Suit**
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.
> . . .
> b.  If a claim is made or a suit is brought against any insured, you must:
> > (1) Immediately record the specifics of the claim or "suit" and the date received and;
> > (2) Notify us as soon as practicable.
> . . .
> **3. Legal Action Against Us**
> No person or organization has a right under this Coverage Part:
> a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

(Docs. 40-2 at 18-19; 40-3 at 17-18; 40-4 at 12; 40-5 at 11; 40-6 at 14; 40-7 at 13 and 40-8 at 21) (bold type in original).

The contracts also contain the following definitions:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

. . .

"Property Damage" means:
> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged.  "Suit" includes:
> a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit our consent; or
> b. Any other alternative dispute resolution proceeding in which damages are claimed and to which the insured submits with our consent.

(Docs. 40-2 at 21-22; 40-3 at 20-21; 40-4 at 15-16; 40-5 at 14-15; 40-6 at 17-18; 40-7 at 16-17 and 40-8 at 26-27).[2]

The contracts in effect for the years 1998 and 1999 also contain amendments which read:

**Section IV Conditions** is amended as follows:
1. Item 2, **Duties in the Event of Occurrence, Claim or Suit** is deleted in its entirety and replaced by the following:
> **Duties in the Event of Act, Error, Omission, Claim or Suit:**
> a. You must see to it that we are notified promptly in writing of an act, error or omission, which may result in a claim . . .
> b. If a claim is made or "suit" is brought against insured, you must see to it that we receive prompt written notice of the claim or "suit."

(Docs. 40-2 at 36 and 40-3 at 34) (bold type in original).

---

[2]The contracts do not define the terms "claim" and "offense".

The new terms contained in the amendments, "act", "error" and "omission", are not

defined.  However, the change in language from "as soon as practicable" to "prompt" is not

material under Florida law.

> Policy provisions as to the time when notice of an accident must be given take a variety of forms such as 'immediate,' 'prompt,' 'forthwith,' 'as soon as practicable,' and 'within a reasonable time.' But the exact phraseology used seems to make very little, if any, difference, and it is well settled that none of these expressions require an instantaneous notice but rather they call for notice to be given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of each particular case. As to what constitutes a reasonable time within which to give such notice, no general rule can be made, since this question depends upon the facts and circumstances of each particular case.

*American Fire & Casualty Co. v. Collura*, 163 So. 2d 784, 792 (Fla. 2d DCA 1964) (hereinafter

"*Collura*").

Plaintiff notified the Defendants of the suit on March 31, 2005, approximately 4 weeks

after the Second Amended Complaint was filed in the Underlying Action.  Plaintiff argues that this

was the first time it became aware that a claim was being made against it which may be covered by

the insurance policies. However, Defendants contend that Plaintiff was aware of the problems that

led to the Underlying Action as early as June 2001, when Plaintiff was first informed of "leaking

in window headers and mildew on walls below window in some units" at the Barrington Place

Apartments. (Doc. 44 at 5).  Furthermore, Defendants allege that Plaintiff's March 2005 notice

was directed only to Transcontinental, and not to Valley Forge.  Therefore, there are material

questions of fact regarding when Plaintiff was first aware of an "occurrence or offense that may

result in a claim", when Plaintiff actually provided notice to Defendants, and whether such notice

was provided within a reasonable time under the facts and circumstances of this case.

Furthermore, under Florida law, the mere violation of a notice provision without prejudice to the insurer does not result in a waiver of benefits.  Instead, the violation creates a presumption of prejudice, and the insured must be given a chance to rebut that presumption.

> [T]he proper interpretation of the effect of prejudice in delayed notice cases [is] that while prejudice to the insurer is presumed, if the insured can demonstrate that the insurer has not been prejudiced thereby, then the insurer will not be relieved of liability merely by a showing that notice was not given "as soon as practicable."

*Tiedtke v. Fidelity & Casualty Co.*, 222 So. 2d 206, 209 (Fla. 1969).

An insured may rebut the presumption of prejudice by, for example, demonstrating "that a complete investigation was made by another insurer or by competent persons who turned over the results to the 'late notice' insurer." *Collura*, 163 So. 2d at 792.  In this case, Plaintiff notes that in the 18 months between the filing of the first complaint and the filing of the amended complaint, there was no significant activity in the Underlying Action.  Furthermore, Plaintiff alleges that, because it hired a competent law firm to investigate and defend against the original complaint in the Underlying Action, Defendants have suffered no prejudice.  Accordingly, disputed issues of material fact exist as to the issue of prejudice and this too precludes summary judgment regarding Defendants' duty to defend.

## III. Conclusion

Accordingly, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 39) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 20, 2007.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE